STAFFORD *et al. v.* LICK *et al.*

Contracts for the sale of land were, under the Mexican law, and by the custom of California, required to be in writing, and although all the forms prescribed were not strictly followed, still it was necessary that the instrument should contain the names of the parties, the thing sold, the date of the transfer, and the price paid.

The following instrument held not to be a conveyance: "By this present I give ample and sufficient power to Don Jose de Jesus Noe to use or dispose of my lot, which I hold granted, as may best seem to him; and, in testimony, I give the present power, in the place of Yerba Buena, the 6th day of October, 1846."

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

This was an action in ejectment, for an unimproved fifty-vara lot, numbered 195, situated on the south side of Pacific street, between Sansome and Montgomery, in San Francisco, upon a title derived directly from Maximo Z. Fernandez, the grantee under the municipal government of Yerba Buena. The defendants answer separately, and each sets up title to an undivided half of the lot; also claiming under Fernandez, by purchase from Jesus Noe. The instrument under which Noe claimed title, and the defendant through him, is in the Spanish language, and is as follows:

" Por el precente doy poder amplio y bastante á Don José de Jesus Noé para que use ó disponga de mi solar que tengo concedido, como mejor le paresca; y para que conste doy el precente poder en el punto de Yerba Buena el dia 6 de Octubre, de 1846."

[TRANSLATION.]

" By this present I give ample and sufficient power to Don José de Jesus Noé to use or dispose of my lot, which I hold granted, as may best seem to him; and, in testimony, I give the present power, in the place of Yerba Buena, the 6th day of October, 1846.          MAXIMO Z. FERNANDEZ."

The case was tried in the Court below, before a jury, and the Court instructed the jury " that if the jury found that there was a local custom to convey land by simple writing of parties, without witnesses, or other formalities, and that Noé paid Fernandez a consideration for the transfer of the premises, the instrument 'B' (the instrument above set forth) was sufficient to transfer the title to Noé; but if no such custom or consideration was proved, then the instrument would not be sufficient." To which charge of the Court the plaintiffs excepted. The jury returned a verdict for the defendants, and judgment was entered accordingly. The plaintiff moved the Court to set aside the judgment and grant a new trial, on the following grounds:

" 1. Insufficiency of the evidence to justify the verdict, and that it is against law.

" 2. Error in law occurring at the trial and excepted to by the plaintiffs."

Which motion was denied, and the plaintiffs appealed to this Court.

*Gregory Yale* for Appellants.

The legal effect of the instrument under which defendants claim title must be determined according to the law in force at the time of its date, supposing its genuineness to be established by Noé.

Conceding that the system of law prevailing in California at the date of the paper was quite as liberal in the latitude extend-

ed to parties wishing to sell real estate as the common law, we look in vain for any term or expression, technical or popular, which tends to manifest the intention of Fernandez to transfer his proprietary interest in the lot to Noé. But, on the contrary, the very terms used exclude such an intention.

The fundamental principle governing such a sale, under the Mexican law, is to be found in an authoritative definition of the nature and effect of the contract of sale:

"Sale is a contract by which one engages to transfer the full property of a thing to another, who engages to pay the price therefor." Schmidt's Civil Law of Spain and Mexico, 130, Art. 595.

To such a contract certain legal clauses are added, the observance of which is required of the contracting parties, unless they have expressly agreed to change or modify them.

"Art. 445. In every onerous contract, he who transfers or sells a right to another, obligates himself by this act to make such transfer or sale effective. For this reason he is bound to defend, at his own expense, the purchaser in any suit which may be brought against him for the thing sold, if thereto required before the publication of the process."

Other authors on the civil law give the same definition of a sale, with the superadded or implied obligation of the vendor.

"The contract of sale is a contract by which one of the contracting parties, called the seller, enters into an obligation with the other to cause him to have freely, by a title of proprietor, a thing, for the price of a certain sum of money, which the other contracting party, called the buyer, on his part obliges himself to pay." Pothier on Obligations, by Cushing, 1.

"Of that which constitutes the substance of the sale," the author says: "Three things are necessary to the contract of sale, a thing which makes the object of it, a price agreed, and the consent of the contracting parties." Ib., 3.

"Of the second requisite, the price necessary to a contract of sale, there are three qualities: 1. It ought to be a serious price. 2. It should be certain and determined, or at least capable of determination. 3. It should consist of a sum of money." Ib., 11.

These principles as to the subject or thing sold, apply indifferently to movable or personal property, or to immovables, as real estate is denominated in the civil law. Schmidt 42.

The contract of sale is further denominated an onerous contract to both parties. It is a sort of an agreement which men make use of among themselves, and it is made with the consent of both parties, for a certain price which the seller and purchaser agree upon. "From this definition it follows: 1. That the purchase and sale is perfect or complete by the consent of both parties. 2. That everything in commerce, or that which is not prohibited, may be sold and purchased. 3. That the price ought to

Stafford *v.* Lick.

be certain,.just, and for money counted, (*en dinero contado.*)   4. That this contract is onerous to both parties." Azo and Manuel's Institutes of the Civil Law of Spain, republished in 2 White, 188.

This paper does not show a single requisite within these definitions of the onerous contract of sale.

1. There is no consent of the parties to a sale.
2. There is no price agreed upon.
3. The subject of sale is wanting.
4. There is no obligation on the part of the seller.
5. There is no obligation on the part of the buyer.

The paper, then, failing as evidencing the onerous contract of sale, and especially in the important element of price or consideration, Noé could take no title to the lot under it. And Noé having no title to the lot under Fernandez, Lick and Ellis, who purchased directly from him, could derive no greater title to it than Noé possessed himself. *Nemo potest plus juris ad alium transferre quam ipse habet,* is a maxim of the civil law applicable to movables and immovables. The principle is applied to real estate in Lenton *v.* Guillotte, 10 Rob., 360; and in Hopkins *v.* Van Winkle, 2 Ann., 145.

*Heydenfeldt* for Appellant.

Cited 1 Domat, (Cushing's ed.,) §§ 2020, 2022. Rule in regard to customs : 1 White's New Recopilacion, 360. Parol sale of lands by the Mexican law, not good : Harris *v.* Brown, 1 Cal. R., 98; Hoen *v.* Simmons, 1 Cal. R., 119; Tohler *v.* Folsom, 1 Cal. R., 207.

*Hall McAllister* for Respondent Lick.

I maintain that this instrument is a good and sufficient deed, and that its execution and delivery by Fernandez to Noé vested in him the westerly half of the lot in question, in fee-simple. I will consider :

1. The language of this instrument.

The parts essential to be examined are the words *poder* and *disponga,* and the phrase *que tengo concedido.* In the best and most authoritative lexicons of the Spanish language to which I have had access, the word *poder* means "right" as well as "power." Salva, under word *poder,* p. 859 ; Nuevo Diccionario de la Lengua Castellaña, p. 669. And as the context of this instrument best supports the former definition, I adopt it as the true one. The verb *usar,* in Spanish, is nearly equivalent in meaning to the English verb "use," but its force is more exactly given by employing for the translation of it the English phrase "use and enjoy." Salva, under word *usar,* p. 1089; Neuman & Baretti's Dic., vol. 1, p. 690; Dic. de la Lengua Cast., quarto ed., p. 1173. *Disponer* is correctly rendered in English by the words

"to dispose of." See the same lexicons above referred to, under word *disponer*. About this word, however, there is no dispute.

Thus Fernandez gives to Noé the right to use, enjoy, and dispose of the westerly half of the lot in question. And when we consider that the word *disponer*, in Spanish, is that most commonly used when the disposition of property is to be expressed— Salva, 410; Dic. de la Leng. Cast., 459; Neuman & Bar. Dic., vol. 1, p. 228,—it may be asked what right of property is there in land not embraced in these words. And it is of little importance whether we give to the substantive *poder* the definition "power," as contended for by plaintiffs, or "right," as contended for by the defendants, for the right or the power to use, enjoy, and dispose of land, is property in the land. It must confer the right to protect and defend, to improve, to lease, to control, to sell, and convey—in fine, all the attributes of property. Such attributes are not given to a mere attorney. The language is inconsistent with the attributes of a mere power of attorney.

It is clear that even under the strict and sometimes harsh rules of the common law, no particular form of words is necessary to give validity to a deed. 2 Blackstone, 287.

The same doctrine obtains in the civil law. Neither system imperatively requires a prescribed form of words. Hennen's Digest of Louisiana Reports, vol. 1, p. 414.

At common law, the proper words of a grant are "*dedi et concessi*,"—"have given and granted"—but any other words that show the intention of the parties will have the same effect. 4 Greenl. Cruise, 51.

In the case of Bridge v. Wellington, 1 Mass., 226, the Court say of a deed: "The rule that when the intention of the parties can be discovered by the deed, the Court will carry that intention into effect if it can be done consistently with the rules of the law, is founded in good sense, and ought always to govern us."

In New York, in the case of Jackson v. Delacroix, 2 Wendell, 433, the Court say, emphatically, "the law will rather do violence to the word, than break through the intent of the parties."

*Sidney V. Smith* filed a brief for the Respondent Ducau.

TERRY, C. J., delivered the opinion of the Court—FIELD, J., and BURNETT, J., concurring.

This is an action of ejectment, for a lot in San Francisco.

Both parties deraign title from the same source, defendants claiming under a paper executed on the 6th of October, 1846, which is in the following words:

"By this present, I give ample and sufficient power to Don

José de Jesus Noé to use or dispose of my lot, which I hold (or have) granted, as may seem best to him; and, in testimony, I give the present power, in the place of Yerba Buena, the 6th day of October, 1846.    MAXIMO Z. FERNANDEZ."

And the main question raised by the record is, whether this paper is a sufficient conveyance.

In Hayes v. Bona, (7 Cal., 158,) we held that contracts for the sale of land were, under the Mexican law, and by the custom of California, required to be in writing, "and although all the forms prescribed were not strictly followed, still it was necessary that the instrument should contain at least the names of the parties, the thing sold, the date of the transfer, and the price paid."

This view is decisive of this case, and on the authority of the opinion in Hayes v. Bona, the judgment of the Court below is reversed.